**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| EMMANUEL TERRILL PLEDGE, | No. 24-CV-69-CJW-KEM |
| Plaintiff, | |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| NICHOLAS L. SCOTT, *et al.*, | |
| Defendants. | |

| | |
|---|---|
| EMMANUEL TERRILL PLEDGE, | No. 24-CV-72-CJW-KEM |
| Plaintiff, | |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| CAPTAIN KENT STEENBLOCK, *et al.*, | |
| Defendants. | |

| | |
|---|---|
| EMMANUEL TERRILL PLEDGE, | No. 24-CV-84-CJW-KEM |
| Plaintiff, | |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| DEPARTMENT OF JUSTICE, | |
| Defendant. | |

EMMANUEL TERRILL PLEDGE,

      Plaintiff,

vs.

OFFICER ROLAND,

      Defendant.

No. 24-CV-91-CJW-KEM

**MEMORANDUM OPINION AND ORDER**

---

EMMANUEL TERRILL PLEDGE,

      Plaintiff,

vs.

BERNARDO GRANWEHR, *et al.*,

      Defendants.

No. 24-CV-92-CJW-KEM

**MEMORANDUM OPINION AND ORDER**

---

EMMANUEL TERRILL PLEDGE,

      Plaintiff,

vs.

BRIAN D. GARDNER, *et al.*,

      Defendants.

No. 24-CV-96-CJW-KEM

**MEMORANDUM OPINION AND ORDER**

---

**TABLE OF CONTENTS**

I.     MOTIONS TO PROCEED IN FORMA PAUPERIS ................................ 4

II.    INITIAL REVIEW STANDARD ........................................................ 7

III.   INITIAL REVIEW ANALYSIS ......................................................... 8

       A.    Section 1983 Standard............................................................ 8

       B.    Bivens Standard ................................................................... 9

       C.    24-CV-69-CJW-KEM ........................................................... 9

             1.    Initial Complaint .......................................................10

             2.    First Motion to Amend ................................................14

             3.    Second Motion to Amend .............................................17

       D.    24-CV-72-CJW-KEM .........................................................19

       E.    24-CV-84-CJW-KEM .........................................................20

       F.    24-CV-91-CJW-KEM .........................................................22

       G.    24-CV-92-CJW-KEM .........................................................24

       H.    24-CV-96-CJW-KEM .........................................................26

IV.    ADMONITION.........................................................................28

V.     CONCLUSION .........................................................................29

This matter is before the Court on six cases filed by plaintiff Emmanuel Pledge; all six cases were filed within the last two months.[1]  In each case, plaintiff filed at least one pro se civil rights complaint and at least one motion to proceed in forma pauperis. For the reasons set forth below, the Court **grants** plaintiff's motions to proceed in forma pauperis but **dismisses** plaintiff's complaints in all cases except 24-CV-91-CJW-KEM.

## I.  MOTIONS TO PROCEED IN FORMA PAUPERIS

Plaintiff, who is incarcerated at the Linn County Correctional Center in Cedar Rapids, Iowa, did not submit the statutory filing fee in any of the cases.[2]  *See* 28 U.S.C. § 1914(a) (requiring filing fee).  In order for a court to authorize the commencement of an action without the prepayment of the filing fee, a person must submit an affidavit that includes a statement of all the assets the person possesses.  *See* 28 U.S.C. § 1915(a)(1). In addition, a prisoner must submit a certified copy of the trust fund account statement (or institutional equivalent) for the six-month period immediately preceding the filing of the complaint, obtained from the appropriate official of each prison at which the prisoner was or is confined.  *See* 28 U.S.C. § 1915(a)(2).

Plaintiff has submitted documents (24-CV-69-CJW-KEM, Doc. 5; 24-CV-72-CJW-KEM, Doc. 3; 24-CV-84-CJW-KEM, Doc. 1; 24-CV-91-CJW-KEM, Doc. 1; 24-CV-92-CJW-KEM, Doc. 1; 24-CV-96-CJW-KEM, Doc. 1) that substantially comply

---

[1] Plaintiff also filed a seventh case, 24-CV-76-CJW-KEM.  On August 21, 2024, the Court granted plaintiff thirty days to file an amended motion to proceed in forma pauperis and to file an amended complaint in that case, which the Court has not yet received.  Thus, that case is not yet ready for initial review.

[2] This includes the $350 filing fee set out by 28 U.S.C. § 1914(a) and the additional $55.00 administrative fee required when filing all civil actions.  *See* 28 U.S.C. § 1914, *Judicial Conference Schedule of Fees*, No. 14.

with the requirements set out above.[3]  Because it is clear that he does not have the assets necessary to pay the filing fee, his motions to proceed in forma pauperis are granted. Nevertheless, even when a court deems it appropriate to grant a prisoner-plaintiff in forma pauperis status, that plaintiff is required to pay the full $350.00 filing fee by making payments on an installment basis.  28 U.S.C. § 1915(b)(1); *see also In re Tyler*, 110 F.3d 528, 529–30 (8th Cir. 1997) ("[T]he [Prisoner Litigation Reform Act] makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal.").  The full filing fee will be collected even if the court dismisses the case because it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks money damages against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).

Plaintiff must pay an initial partial filing fee in each case in the amount of twenty percent of the greater of his average monthly account balance or average monthly deposits for the six months preceding the filing of the complaint.  28 U.S.C. § 1915(b)(1).  Based on the documents that plaintiff submitted, I find that the initial partial filing fee is $4.00 for each case.[4]  (*See, e.g.,* 24-CV-84-CJW-KEM, Doc. 1 at 3).  Plaintiff shall submit

---

[3] In 24-CV-69-CJW-KEM and 24-CV-72-CJW-KEM, plaintiff initially filed a motion to proceed in forma pauperis that did not comply with the requirements set out above because it did not contain a certified copy of plaintiff's prison trust fund account statement or institutional equivalent.  (24-CV-69-CJW-KEM, Doc. 1; 24-CV-72-CJW-KEM, Doc. 1).  In each case, plaintiff has now filed amended motions to proceed in forma pauperis that complied by including a certified prison trust fund account statement.  (24-CV-69-CJW-KEM, Doc. 5; 24-CV-72-CJW-KEM, Doc. 3).

[4] Plaintiff submitted trust fund account statements that provide different average monthly account balances and average monthly deposits.  (24-CV-69-CJW-KEM, Doc. 5, at 3; 24-CV-72-CJW-KEM, Doc. 3, at 3; 24-CV-84-CJW-KEM, Doc. 1, at 3; 24-CV-91-CJW-KEM, Doc. 1, at 3; 24-CV-92-CJW-KEM, Doc. 1, at 3; 24-CV-86-CJW-KEM. Doc. 1, at 3).  Plaintiff submitted trust fund account statements with matching dollar amounts in the four most recent cases (24-

5

$4.00 for each case by no later than 30 days from the date of this order. If the court does not receive payment by this deadline, the instant actions shall be dismissed under Federal Rule of Civil Procedure 41(b) (permitting dismissal when a plaintiff either fails to prosecute or fails to respond to an order of the court); *Hutchins v. A.G. Edwards & Sons*, 116 F.3d 1256, 1259–60 (8th Cir. 1997) (explaining court's power to dismiss an action). If necessary, plaintiff may request in a written motion an extension of time to pay the initial partial filing fees.

In addition to the initial partial filing fee, a prisoner-plaintiff must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court. Specifically:

> [a]fter payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). Therefore, after plaintiff pays in full the initial partial filing fees discussed above, the remaining installments shall be collected by the institution having custody of the plaintiff. The Clerk of Court is directed to send a copy of this order and the notice of collection of filing fees to the appropriate official at the place where plaintiff is an inmate.

---

CV-84-CJW-KEM, Doc. 1, at 3; 24-CV-91-CJW-KEM, Doc. 1, at 3; 24-CV-92-CJW-KEM, Doc. 1, at 3; 24-CV-96-CJW-KEM, Doc. 1, at 3), and the Court will rely on the most recent trust fund account statements for the calculation of the initial partial filing fees.

## II.    INITIAL REVIEW STANDARD

Courts must liberally construe a pro se complaint.  *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Smith v. St. Bernards Reg'l Med. Ctr.*, 19 F.3d 1254, 1255 (8th Cir. 1994); see *also Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).   However, the Court may dismiss an in forma pauperis complaint if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant that is immune from a monetary judgment.   28 U.S.C. § 1915(e)(2); *see also* 28 U.S.C. § 1915A(b)(1) (requiring courts to conduct initial reviews of prisoner complaints).

In reviewing a prisoner or in forma pauperis complaint, unless the facts alleged are clearly baseless, they must be weighed in favor of the plaintiff.   *See Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992).   Pro se complaints, however, must allege sufficient facts to support the plaintiff's claim.   *Stone*, 364 F.3d at 914.   A claim is "frivolous" if it "lacks an arguable basis in law or in fact."   *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *accord Cokeley v. Endell*, 27 F.3d 331, 332 (8th Cir. 1994).   In determining whether a complaint fails to state a claim under Section 1915(e)(2), courts generally rely on the standards articulated in Federal Rule of Civil Procedure 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997); *see also Atkinson v. Bohn*, 91 F.3d 1127, 1128–29 (8th Cir. 1996) (applying Rule 12(b)(6) standard to a dismissal under 28 U.S.C. § 1915(e)(2).   An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   Under Section 1915(e)(2), a court may review the complaint and dismiss sua sponte those claims that fail "to raise a right to relief above the speculative level," *id.* at 555, or that are premised on meritless legal theories or clearly lack any factual basis, *see Neitzke*, 490 U.S. at 325.

### III.    INITIAL REVIEW ANALYSIS

#### A.    Section 1983 Standard

Title 42, United States Code, Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

Section 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). However, Title 42, United States Code, Section 1983 provides no substantive rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). "One cannot go into court and claim a 'violation of [Section] 1983'—for [Section] 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, Section 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (stating that Section 1983 "merely provides a method for vindicating federal rights elsewhere conferred."); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) ("Constitution and laws" means Section 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution.). To state a claim under Section 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States and (2) the alleged deprivation of that right was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

8

## B.    *Bivens* Standard

The Eighth Circuit has stated that, "[a]s a general rule, *Bivens* claims and § 1983 claims are almost identical and involve the same analysis." *Solomon v. Petray,* 795 F.3d 777, 789 n.7 (8th Cir. 2015). "An action under *Bivens* is almost identical to an action under section 1983, except that the former is maintained against federal officials while the latter is against state officials." *Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir. 1999); *see also Wright v. United States,* 813 F.3d 689, 695 (8th Cir. 2015) (applying excessive force standards in a *Bivens* action against U.S. Marshals).

## C.    *24-CV-69-CJW-KEM*

In 24-CV-69-CJW-KEM, plaintiff filed an initial complaint on July 18, 2024. (See 24-CV-69-CJW-KEM, Doc. 1-1). On August 5, 2024, plaintiff filed an amended motion to proceed in forma pauperis and attached a Section 1983 complaint that he flagged "[i]n relations to 1:24-CV-00069-CJW-KEM." (24-CV-69-CJW-KEM, Doc. 3-1). The Clerk of Court docketed that document as an amended complaint in case 24-CV-69-CJW-KEM. Similarly, on August 20, 2024, plaintiff filed a second amended motion to proceed in forma pauperis and attached a Section 1983 complaint on which he noted that he was "asking to be amended to related cases: 1:24-CV-00069-CJW-KEM [and] 1:24-CV-00072-CJW-KEM." (24-CV-69-CJW-KEM, Doc. 5-1). The Clerk of Court docketed that Section 1983 form as an amended complaint in case 24-CV-69-CJW-KEM. (*Id.*).

Under Federal Rule of Civil Procedure 15(a)(2), a party may amend a pleading prior to trial with leave of court. Allowing amendment of pleadings is improper if the motion to amend involves "undue delay, bad faith, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 497 (8th Cir. 2009). "The court should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(A)(2). "It is well-established that an amended complaint supercedes

an original complaint and renders the original complaint without legal effect." *In re Atlas Van Lines, Inc.,* 209 F.3d 1064, 1067 (8th Cir. 2000). Plaintiffs, including those proceeding pro se, must comply with the filing requirements as set out in the Local Rules for the Northern District of Iowa. Local Rule 15 provides:

> A party moving to amend or supplement a pleading pursuant to Federal Rule of Civil Procedure 15(a)(2) must describe in the motion the changes sought, and must electronically attach to the motion and file under the same docket entry the proposed amended or supplemented pleading . . .. An amended or supplemented pleading, whether filed as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1) or as an electronic attachment to a motion, must not, except by leave of court, incorporate any prior pleading by reference, but must reproduce the entire new pleading. If a motion to amend or supplement a pleading is granted, the Clerk of Court will detach and docket the proposed pleading.

LR 15.

Upon further review, both documents docketed as amended complaints appear to be an attempt to add a claim to case 24-CV-69-CJW-KEM, rather than an amended complaint intended to supplant plaintiff's initial complaint in this case. Even though plaintiff has failed to comply with Rule 15, both documents will be construed as a motion to amend his complaint to add claims.[5] (*Id.*). However, as will be discussed below, both motions to amend (24-CV-69-CJW-KEM, Docs. 3-1, 5-1) are denied because of the futility of the amendment.

### 1. Initial Complaint

In plaintiff's initial complaint, he names as defendants Judge Nicholas L. Scott, District Attorney Nicholas Maybanks, Assistant County Attorney Monica Slaughter, and Public Defender Brian Sissle. (24-CV-69-CJW-KEM, Doc. 1-1, at 2-3). He asserts

---

[5] In any future filings, plaintiff should include all claims he seeks to pursue in an amended complaint and that amended complaint will supersede any previous complaints. In addition, plaintiff may only associate a filing with a single case number.

claims of "color of due process; illegal detainment & suppressions of freedom & liberty."
(*Id.*, at 3). Plaintiff appears to take issue with his sentencing for his Iowa state court
convictions. (*Id.,* at 4). He states:

> I appealed a sentence in a criminal conviction that was to run consecutively
> to the not yet imposed sentence of a different conviction. I pled guilty to
> domestic abuse (enhanced) in case number FECR140949. The agreement
> stated the sentences would run concurrently with the sentence in another
> case. The agreement said nothing about a 3rd number AGCR141183 or
> about a consecutive sentencing with the sentence in AGCR141183. On the
> same day I pled guilty to operating without owners consent in case number
> AGCR141183. The plea agreement stated the sentence would be
> consecutive to FECR140949. Sentence in AGCR141183 was imposed the
> same day. The sentence run consecutively to the yet to be imposed sentence
> in FER140949, which was not entered until 11 days later. . . . the case was
> then transferred to the court of appeals for disposition based on with merit
> within.

(*Id.,* at 4).[6] For relief, he seeks $932,000 in damages plus "for the conviction to be
expunged or exonerated." (*Id.*, at 5).

There are numerous problems with plaintiff's initial complaint. First, he fails to
comply with the Federal Rules of Civil Procedure. A pro se litigant "is not excused from
complying with procedural rules, including Federal Rule of Civil Procedure 8, which
requires a short and plain statement showing the pleader is entitled to relief, and that each
allegation in the pleading be simple, concise, and direct." *Cody v. Loen*, 468 F. App'x
644, 645 (8th Cir. 2012) (unpublished per curiam) (citation omitted). To state a cause
of action, "[a] pleading that merely pleads labels and conclusions, or a formulaic

---

[6] On September 21, 2022, the Court of Appeals of Iowa affirmed Pledge's convictions, vacated
his sentences, and remanded for resentencing, holding that the case "required the exercise of
discretion to determine whether the sentence in FECR140949 should run consecutively [rather
than concurrently] to the sentence in AGCR141183." *State v. Pledge,* 988 N.W.2d 736, 2022
WL 4361797, at *3 (Iowa Ct. App. 2022).

recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010). Plaintiff has failed to provide a statement of facts clearly explaining how each defendant violated his rights and showing he is entitled to relief. Rather, he simply summarizes part of the procedural history of a state conviction. Plaintiff has failed to allege facts giving rise to any plausible claims against defendants. His initial complaint does not make any discernible specific claims against any individual and thus fails to satisfy the requirements of Federal Rule of Civil Procedure 8(a)(2).

Even if the complaint had been sufficiently pled, any claims related to his state convictions are likely precluded by the *Rooker-Feldman* doctrine or barred by *Heck v. Humphrey,* 512 U.S. 477, 487 (1994). "The *Rooker–Feldman* doctrine provides that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments." *Ballinger v. Culotta*, 322 F.3d 546, 548 (8th Cir. 2003) (internal citations omitted); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp*, 544 U.S. 280, 283–84 (2005). Unless the related state court decision been invalidated, the federal court cannot act as "super" appeals court.

> Other than the United States Supreme Court, federal courts are without jurisdiction to adjudicate claims which seek review of a state decision on the ground that the decision violated the federal constitutional rights of one of the parties.

*Owens v. Welch*, Civil No. 09-2011, 2009 WL 1203716, at *3 (W.D. Ark. 2009) (unpublished) (citations omitted).

The Eighth Circuit has noted that "[a]n important consideration for a court confronted with the issue of whether *Rooker-Feldman* applies is to analyze 'the effect the requested federal relief would have on the state court judgment.' *See Simes v. Huckabee*, 354 F.3d 823, 827 (8th Cir. 2004)." *Webb as next friend of K. S. v. Smith*, 936 F.3d 808, 816 (8th Cir. 2019). To the extent he seeks the invalidation of his state conviction,

the relief plaintiff requests would, if granted, invalidate state court judgments and is therefore barred by the *Rooker-Feldman* doctrine. Similarly, his complaint is likely *Heck*-barred because a judgment in favor of plaintiff "would necessarily imply the invalidity of his conviction or sentence." *Heck,* 512 U.S. at 487. Even when a plaintiff demands only money damages, he cannot bring a non-habeas civil action that would call into question the lawfulness of his detention. *Sheldon v. Hundley*, 83 F.3d 231, 233 (8th Cir. 1996).[7]

In addition, monetary claims against the defendants are barred because they are either immune from suit or improper defendants. Judge Scott and the prosecuting attorneys named as defendants are entitled to immunity against money damages because plaintiff is seemingly complaining about each performing their traditional functions. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Liles v. Reagan*, 804 F.2d 493, 495 (8th Cir. 1986) ("[A] judge is entitled to absolute immunity if the acts complained of were 'judicial acts' and were not taken in the 'clear absence of all jurisdiction.'") (citation omitted); *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266–67 (8th Cir. 1996) ("Absolute immunity covers prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process.").

The final defendant, Public Defender Sissle, is also an improper defendant. Section 1983 specifically provides for a federal cause of action against a "person" who, under color of state law, violates another's federal rights. For purposes of Section 1983, the Supreme Court has held that "a public defender does not act under color of state law

---

[7] To the extent plaintiff is seeking to have his conviction or sentence vacated, a Section 1983 action is not the proper vehicle. Post-conviction motions attacking a state conviction or sentence must be brought in a petition for writ of habeas corpus under 28 U.S.C. § 2254. Additionally, although plaintiff's state court conviction was remanded for resentencing, it has not been invalidated within the meaning discussed in *Heck*.

when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981). *See also Myers v. Vogal*, 960 F.2d 750, 750 (8th Cir. 1992) (stating that attorneys who represented plaintiff, "whether appointed or retained, did not act under color of state law and, thus, are not subject to suit under section 1983"); *Holbird v. Armstrong-Wright,* 949 F.2d 1019, 1020 (8th Cir. 1991) ("[t]he conduct of counsel, either retained or appointed, in representing clients, does not constitute action under color of state law of purposes of section 1983 violations"); *and Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988) ("[p]ublic defenders do not act under color of state law for purposes of 42 U.S.C. § 1983 when performing the traditional functions of defense counsel"). Plaintiff does not include any specific allegations against defendant Sissle, but presumably Sissle represented plaintiff in his criminal case and thus is included based on traditional attorney functions. Because the public defender defendant was not acting under color of state law, the initial complaint fails to state a Section 1983 claim upon which relief could be granted.

For all the reasons set forth above, plaintiff fails to state a cognizable Section 1983 claim against any defendant.

### 2. *First Motion to Amend*

Plaintiff seeks to add a Section 1983 claim against a set of Linn County Correctional officers, including Captain Kent Steenblock, Major Matthew Sandvick, Lieutenant Shover, and unknown Sergeants and Deputies. (24-CV-69-CJW-KEM, Doc. 3-1, at 3). He asserts that "Linn County's Correctional Center staff and command officers akin have been denying my right of uncensored legal correspondence which is guaranteed to me under the color of Due Process. Their negligence is prohibiting my ability to correspond freely" and "Linn County has interfered with my ability to send and receive mail." (*Id.,* at 3-4). The only allegation plaintiff includes specific to an individual defendant is that Captain Steenblock viewed grievances that plaintiff filed, met

with him, and "formally resolved my issues/grievances via verbal communication on the said matter by authorizing verbally to me whatever grievances/legal paperwork/legal paper/legal envelopes/any notarizations/any copies of forms per my request would be given to me at my disposal and that it would be recorded in my file for all staff to be made aware of but clearly that hasn't been the case and it still isn't now." (*Id.*, at 5). Plaintiff attaches a copy of a grievance that asserts that his "1983 civil suit" complaints were rejected and not mailed, interfering in his suit, and then he requests another Section 1983 complaint form. (*Id.*, at 12). He seeks $932,0000 in damages. (*Id.*, at 25).

Plaintiff again fails to comply with the requirements of Rule 8(a). It is difficult to discern what his factual allegations entail as much of the document is nonsensical. For example, he asserts there is a conflict of interest and his peace and tranquility have been disrupted and Linn County Correctional Facility has "maliciously or negligently act[ed] in color of my civil rights." (*Id.*, at 5). When discussing his grievance, he asserts that he "claimed that the Linn County Correctional Center staff & participating inmates ha[ve] gotten in my way by interfer[ ]ing in a 1983 complaint for violation of civil rights cause by creating a controversy that's becoming a conflict of interest to myself & this facility alike disrupting the peace & tranquility of being an inmate as well as the facility." (*Id.*, at 7). It is unclear whether his allegations stem from a difficulty in getting his forms completed, such as his inmate account statement, or from a difficulty in getting his outgoing mail sent. He makes some general conclusory allegations about all the defendants but fails to include specific allegations against an individual defendant that support a plausible and cognizable claim that any individual violated his rights. As such, this claim must be denied.

To the extent he is asserting an access to the courts claim, that claim fails because plaintiff does not allege any harm. The right to access the courts is focused on the detainees' ability to present a claim to the court. *Lewis v. Casey*, 518 U.S. 343, 354

(1996) at 354. A plaintiff must show that the lack of access to the relevant legal materials caused him an actual injury to have standing to bring a claim for denial of access to the courts. *Id.*, at 349. Actual injuries resulting from the denial of access to the courts include, for example, a court dismissing a prisoner's claim due to the lack of access to legal materials, or the inmate being unable to file a claim for an actionable harm. *Id.*, at 351; *see also Root v. Towers*, 238 F.3d 423 (6th Cir. 2000) (unpublished) ("[n]o actual injury occurs without a showing that such a claim has been lost or rejected, or that the presentation of such a claim is currently being prevented."); *Nitz v. Hall*, No. 11-1143, 2011 WL 13193297, at *3 (C.D. Ill. June 16, 2011), *aff'd*, 473 F. App'x 513 (7th Cir. 2012) (citations omitted) ("when a plaintiff alleges a denial of the right to access the courts, he must usually plead specific prejudice to state a claim, such as by alleging that he missed court deadlines, failed to make timely filing, or that legitimate claims were dismissed because of the denial of reasonable access to legal resources."). Plaintiff does not allege that he suffered a specific harm or prejudice. To the contrary, the Court has been inundated with filings from plaintiff and he has not missed any deadlines. Plaintiff has failed to allege a claim for which relief can be granted, and thus the Court denies leave to add this claim because it is futile.[8]

---

[8] Moreover, there is a question of whether the claims in this case are properly joined. Generally, multiple defendants may be joined in one lawsuit only if the claims against them: (1) arise "out of the same transaction, occurrence, or series of transactions or occurrences"; and (2) involve "any question of law or fact common to all defendants." FED. R. CIV. P. 20(a)(2); *see also* FED. R. CIV. P. 21 (providing that a court may sua sponte "add or drop" an improperly joined party or "sever" any claim); *Stephens v. Does*, 777 Fed. App'x 176, 177 (8th Cir. 2019) (affirming dismissal without prejudice of several unrelated claims). A prisoner cannot attempt to defeat the filing fee requirements of Section 1915 by joining unrelated and legally distinct claims in one lawsuit. *See Bailey v. Doe*, 434 F. App'x 573, 573 n.1 (8th Cir. 2011) (affirming severance of a prisoner's complaint into three separate actions and obligating him to pay three separate filing fees).

### 3. Second Motion to Amend

In his second motion to amend his complaint, plaintiff seeks to add a Section 1983 claim against Linn County Jail and Linn County Correctional Officers, including Captain Kent Steenblock, Major Matthew Sandvick, and Lieutenant Shover. (24-CV-69-CJW-KEM, Doc. 5-1, at 3). He asserts that "[t]he defendants aforementioned above ha[ve] acted negligently in considering Protected Health Information under the provisions" of HIPAA[9] and "tampering with mail causing interference in a class action civil case." (*Id.,* at 3). In the part of the Section 1983 asking for the date and time of the events giving rise to his claims, plaintiff states: "*See* Exhibits 1, 2, 3 for dates and time of incurred charges for medical treatment and procedures." (*Id.*, at 5). Yet he does not attach any exhibits and fails to make any factual allegations explaining how charges for medical treatment relate to his claims. (*Id.*). In the part of the Section 1983 form asking for the facts underlying the claims, plaintiff makes vague allegations of "mail fraud" and opening his mail and interfering with his claims. (*Id.*). Yet in the injury section of the form he discusses conditions of confinement, such as having to sleep on concrete and the temperature. (*Id.*). He asserts nurses know about his unnamed conditions yet he has not named any nurses as defendants. And in the section addressing his requested relief, he mentions unnecessary delay, interference with lawsuits, sanitation, black mold, and other conclusory and vague allegations.

---

[9] Plaintiff makes a conclusory allegation of a HIPAA violation in this and other filings in other cases. However, even if demonstrated a discernible violation of plaintiff's rights under the Health Insurance Portability and Accountability Act ("HIPAA"), HIPAA does not provide a private cause of action. *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010). "Since HIPAA does not create a private right, it cannot be privately enforced either via § 1983 or through an implied right of action." *Adams v. Eureka Fire Protection District*, 352 Fed. App'x. 137, 139 (8th Cir. 2009). Therefore, any HIPAA claim must be dismissed for failure to state a cause of action.

Once again, plaintiff's filing suffers from a number of problems. His conclusory and vague assertions are unrelated and difficult to discern into actual claims. Plaintiff does not tie allegations to particular defendants. Rather, he directs his claims generally against every defendant. *See Tatone v. SunTrust Mortgage, Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012) ("A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant."); *Boggs v. Am. Optical Co.,* No. 4:14-CV-1434-CEJ, 2015 WL 300509, at *2 (E.D. Mo. Jan. 22, 2015) ("A 'shotgun pleading' or 'kitchen sink pleading' in which a plaintiff asserts every possible cause of action against a host of defendants for actions over a prolonged period . . . but without facts specific enough that those defendants can respond to the allegations does not comport with even the most generous reading of Rule 8(a)."). Plaintiff's filing includes scattershot comments and complaints about a multitude of issues. However, the Court will not "mine" the complaint to try to make those comments into a properly plead allegation. Because it does not include a short and plain statement of his claims, this filing fails to satisfy the requirements of Rule 8(a).

In addition, Linn County Correctional Center is an improper defendant. Section 1983 specifically provides for a federal cause of action against a "person" who, under color of state law, violates another's federal rights. In *Will v. Michigan Dept. of State Police,* the Supreme Court ruled "that a State is not a person within the meaning of § 1983." 491 U.S. 58, 63 (1989). *See also Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (stating that "county jails are not legal entities amenable to suit"); *Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (stating that "departments or subdivisions" of local government are not "juridical entities suable as such"); and *De La Garza v. Kandiyohi Cty. Jail*, 18 F. App'x 436, 437 (8th Cir. 2001)

(affirming district court dismissal of county jail and sheriff's department as parties because they were not suable entities).

For the reasons set forth above, the Court **denies** plaintiff leave to add claims from this motion to amend because of the futility of the amendment.

### D. 24-CV-72-CJW-KEM

On August 5, 2024, plaintiff filed the initial complaint in 24-CV-72-CJW-KEM. (24-CV-72-CJW-KEM, Doc. 1-1). Filed on the same day as 24-CV-69-CJW-KEM, Doc. 3-1, it includes the same claim against the same defendants. The only difference is that a few pages are missing from the complaint docketed as 24-CV-72-CJW-KEM, Doc. 1-1. Because the present complaint is duplicative, the Court **dismisses** this complaint without prejudice. *See Aziz v. Burrows,* 976 F.2d 1158, 1158-59 (8th Cir. 2004) (affirming Section 1915 dismissal because courts may dismiss duplicative complaint raising issues directly related to issues in other pending action by same party); *Gearhart v. Sarrazine,* 553 Fed. App'x 659, 660 (8th Cir. 2014) (holding that it is proper to dismiss duplicative claims "whether under 28 U.S.C. § 1915(e)(2)(B) or 28 U.S.C. § 1915A").

On August 20, 2024, plaintiff filed an amended motion to proceed in forma pauperis and attached a Section 1983 complaint on which he stated "I'm asking for this one to be amended to Case No. 1:24-CV-00072-CJW-KEM." (24-CV-72-CJW-KEM, Doc. 3-1). The Clerk of Court docketed that document as an amended complaint in case 24-CV-72-CJW-KEM. Filed on the same day as 24-CV-69-CJW-KEM, Doc. 5-1, plaintiff includes the same defendants and there appears to be sufficient overlap in the various allegations and requested relief such that the Court finds 24-CV-72-CJW-KEM, Doc. 3-1 to be duplicative of 24-CV-69-CJW-KEM, Doc. 5-1. *See Jones v. Green*, No. 1:18-CV-15-DDN, 2018 WL 1566845, at *2 (E.D. Mo. Mar. 30, 2018) (dismissing a complaint on initial review as duplicative because the parties, issues, and available relief do not significantly differ between the two actions).

Accordingly, case 24-CV-72-CJW-KEM is **dismissed** without prejudice.[10]

### E.      *24-CV-84-CJW-KEM*

On August 23, 2024, plaintiff filed a civil rights complaint (24-CV-84-CJW-KEM, Doc. 1-1) against the Department of Justice.  He also filed a document that the Clerk of Court docketed as correspondence because it was not labeled with a case number, but upon further review the Court concludes it is a missing page from the complaint in this case and will construe it as such.  (24-CV-84-CJW-KEM, Doc. 2).

Plaintiff asserts a claim under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)[11] against the "Department of Justice/(Unknown Agents)."  (24-CV-0084-CJW-KEM, Doc. 1-1, at 2, 3).  He contends that "[t]he Department of Justice failed to meet the criteria of Due Process related to a criminal conviction that backfired creating a breach that compromised my Constitutional freedom resulting in a strategic corruption.  Under the National Labor Relations Act, it is illegal to compromise my individual Constitutional Right to a fair trial and prosecution, mistakenly entering in documents that evident support that a labor law violation has occur[r]ed."  (*Id.)*  Plaintiff asserts that the events giving rise to his suit took place approximately at 10 am on September 22, 2022.  (*Id.*, at 4; 24-CV-84-CJW-KEM, Doc. 2, at 1).  He asserts he filed a notice of appeal in Case No. 21-1748[12] on September 22,

---

[10] It should be noted that if the Court did not dismiss the complaints in 24-CV-72-CJW-KEM as duplicative it would dismiss them for failure to state a cognizable claim.

[11] *Bivens* allows persons claiming a constitutional violation to assert a monetary claim against individuals working for the federal government.  "The effect of [*Bivens*] was, in essence, to create a remedy against federal officers, acting under color of federal law, that was analogous, to [a 42 U.S.C.] § 1983 action against state officials."  *Dean v. Gladney*, 621 F.2d 1331, 1336 (5th Cir. 1980); *see also Schowengerdt v. General Dynamics Corp.*, 823 F.2d 1328, 1337–38 (9th Cir. 1987).

[12] This is the same appeal before the Court of Appeals of Iowa, *see State v. Pledge,* 2022 WL 4361797, at *3, that plaintiff discusses in case 24-CV-69-CJW-KEM.

2022, and that the Department of Justice demonstrated a "lack of efforts when I first brought my chief complaint to their attention back then through written appearance . . . when the ruling of the appeal [was] in the beginning stages of obstruction of justice, violation of due process, and labor law violations very first occurred denying me the right to Constitutional freedom." (24-CV-84-CJW-KEM, Doc. 1-1, at 3). After including the same recitation of the procedural history of his Iowa state convictions that he included in his initial complaint in 24-CV-69-CJW-KEM, he asserts he was injured through the failure to confirm inaccuracies of paperwork.

As an initial matter, plaintiff identifies the Department of Justice as a defendant, and the Department of Justice is not a proper defendant. (24-CV-84, Doc. 1-1, at 1, 2). The Supreme Court has stated that, "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Plaintiffs cannot bring a *Bivens* action directly against a federal agency. *F.D.I.C. v. Meyer,* 510 U.S. 471, 484-85 (1994). "*Bivens* allows for a cause of action for damages against federal officials, not federal agencies, for certain constitutional violations." *Patel v. United States Bureau of Prisons,* 515 F.3d 807, 812 (8th Cir. 2008) (citation omitted); *see also Spencer v. United States Dep't of Just.*, No. CV 23-0724 (JRT/JFD), 2023 WL 5178191, at *3 (D. Minn. Aug. 11, 2023) ("Spencer cannot sustain a *Bivens* claim against the Department of Justice because it is a federal agency—not a government official."). Accordingly, to the extent that plaintiff is making a claim against the Department of Justice, it must be denied.

In addition, plaintiff fails to make a specific and intelligible allegation about what involvement any Department of Justice employee had with his Iowa state court convictions and how those actions violated his constitutional rights. His allegations are vague and conclusory, and thus do not set forth a cognizable claim. *See Wiles v. Capitol*

*Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("While the court must accept allegations of fact as true . . . the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations"); *Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017) (stating a claim requires more than "labels and conclusions or a formulaic recitation of the elements of a cause of action."); *see also Kaylor v. Fields,* 661 F.2d 1177, 1183 (8th Cir. 1981) (stating that a "complaint must contain something more than mere conclusory statements that are unsupported by specific facts"). Thus, he does not comply with Rule 8(a). Moreover, if plaintiff is contesting his conviction or sentence in those cases, a *Bivens* suit is not the proper vehicle for doing so and it would be *Heck* barred. Plaintiff's complaint is thus **dismissed**.

### F.    *24-CV-91-CJW-KEM*

In 24-CV-91-CJW-KEM, plaintiff asserts a Section 1983 claim against Officer Roland from the Hiawatha Police Department for use of excessive force. (24-CV-91-CJW-KEM, Doc. 1-1 at 1-3). Plaintiff asserts that defendant used excessive force when tasing him on June 24, 2024, "to the point that ultimately could have [given] me a heart attack while detaining me on an outstanding warrant." (*Id.*, at 3). Plaintiff states that he made a mistake when he ran from defendant, that he was treated at St. Luke's Hospital for related injuries, and that the tasing left permanent burn marks on his skin and caused him mental health issues. (*Id.*, at 5).

The standard regarding excessive force in the context of an arrest or a *Terry* stop is well settled.

> We analyze excessive force claims in the context of seizures under the Fourth Amendment, applying its reasonableness standard. *Henderson*, 439 F.3d at 502. The Supreme Court's "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396, 109

S. Ct. 1865, 104 L. Ed. 2d 443 (1989). "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Henderson*, 439 F.3d at 502 (quoting *Littrell v. Franklin*, 388 F.3d 578, 583 (8th Cir. 2004) and *Greiner v. City of Champlin*, 27 F.3d 1346, 1354 (8th Cir. 1994)) (internal quotations omitted).

We evaluate the reasonableness of an officer's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396, 109 S. Ct. 1865. This calculus allows "for the fact that police officers are often forced to make split-second decisions—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 397, 109 S. Ct. 1865. The reasonableness inquiry, however, is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Id*. Circumstances relevant to the reasonableness of the officer's conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396, 109 S. Ct. 1865; *see also Howard v. Kansas City Police Dep't*, 570 F.3d 984, 989 (8th Cir. 2009).

*Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009); *see also Schoettle v. Jefferson Cty.*, 788 F.3d 855, 859 (8th Cir. 2015). "The standard for a violation of the right to be free from excessive force under the Iowa Constitution does not appear to differ from the federal standard." *McElree v. City of Cedar Rapids, Iowa*, 372 F. Supp. 3d 770, 793 & n.24 (N.D. Iowa 2019), *aff'd sub nom. McElree v. City of Cedar Rapids*, 983 F.3d 1009 (8th Cir. 2020).

Under that standard, excessive force is a fact intensive inquiry. Plaintiff alleges that defendant used excessive force when tasing and arresting him. These allegations are sufficient to survive summary dismissal, as the Court cannot determine at this early stage

23

if the force employed was reasonable under the circumstances. Therefore, the excessive force claim against defendant may proceed.

### G. 24-CV-92-CJW-KEM

In 24-CV-92-CJW-KEM, plaintiff asserts a *Bivens* claim against the Iowa Office of Ombudsman and two Ombudsman Bert Dalmer and Ombudsman Bernardo Granwehr. (24-CV-0092-CJW-KEM, Doc. 1-1, at 2-3). Plaintiff argues that defendants failed to conduct an impartial investigation of his complaints about the Linn County Correctional Center. (*Id.*, at 3-4). He states "I'm objecting [to] the performance of the defendants function to evaluate through impartial investigations, whether the state and local government agencies in Iowa followed laws, policies, and best practices in the context of specifical complaints." (*Id.*, at 3).

He argues in his complaint that he was moved to a unit that was housing an inmate who had been diagnosed two weeks prior with tuberculosis, and that he called the Ombudsman's Office. (*Id.*, at 5). Plaintiff states that he spoke with Erin Rouse "regarding safety and medical hazards of this facility amongst various other complaints." (*Id.*). Plaintiff's only allegations about the individual defendants are: "[c]leary it's a conflict of interest for Mr. Dalmer to do his job properly. He's a senior deputy ombudsman and his performance has fell below an objectively reasonable standards. As well as Mr. Granwehr if he entertained the thought of allowing Mr. Dalmer to deny me my ethical proportion of justice being served." (*Id.*). Plaintiff attaches to his complaint a letter he received from Bert Dalmer that states:

> In your most recent letter, you informed us that you have filed three federal lawsuits against the Linn County Correctional Center for a wide variety of perceived problems. You said you "simply want (us) to be aware of the steps (You) have taken," but you then asked us to "look into what I'm saying."
> Please understand that we typically decline to investigate any complaints that are actively the focus of litigation. We do this for several reasons –

primarily because our actions would be duplicative, they might interfere
with the ongoing court case, and because a judge has the authority to order
remedies that we do not.

(*Id.*, at 12). Plaintiff does not allege that he contacted tuberculosis or suffered another
physical injury from his unit placement or by the ombudsman office's declining to
conduct an investigation. (*Id.,* at 5).

As an initial matter, the Iowa Office of Ombudsman is not a federal agency and
there is no indication that any of the defendants are a part of or work for the federal
government. Therefore, *Bivens* does not apply.

Even if plaintiff asserted a Section 1983 claim against defendants, though, such a
claim would not proceed past initial review. Iowa Code, Section 2C.2 creates the office
of ombudsman, and that office is granted the power to conduct investigations under Iowa
Code, Section 2C.9. However, the office also may decline to investigate complaints for
a variety of reasons, including "[t]he complainant has available another remedy or
channel of complaint which the complainant could reasonably be expected to use." Iowa
Code, Section 2C.12. Here, plaintiff indicates that he complained about various issues
to the ombudsman's office, his attached letter indicates he informed the office that he had
filed related cases in this Court, and thus the office declined to conduct its own
investigation. As noted above, Section 1983 provides a remedy for violation of rights
secured by federal statutes or the United States Constitution. *See Gunderson v. Schlueter*,
904 F.2d 407, 409 (8th Cir. 1990). *See also Moody v. Hicks*, 956 S.W.2d 398, 402 (Mo.
Ct. App. 1997) (rejecting a plaintiff's argument that a provision of the Missouri
Constitution should be considered "self-executing," such that she could assert a claim for
its violation; reasoning that claims for violations of the United States Constitution are
cognizable only because Congress enacted legislation authorizing such suits (through
§ 1983) and that "[t]he Missouri General Assembly has not enacted similar legislation").

However, violations of state law can amount to a due process violation, and a liberal construction of his complaint could theoretically allow for an allegation of a due process violation. However, plaintiff's complaint does not sufficiently state a plausible claim that he was deprived of any life, liberty, or property interest. Simply because the ombudsman's office declined to conduct further investigation does not give rise to a plausible claim. *See Ambrose v. Angrick*, No. 4:08-CV-00282, 2008 WL 11429337, at *5 (S.D. Iowa Oct. 16, 2008), *aff'd,* 345 F. App'x 207 (8th Cir. 2009) ("the Court finds that Plaintiff has not alleged sufficient facts to give rise to a plausible claim that he was deprived of any life, liberty, or property interest. More specifically, the Court finds that Defendant's statutory investigative duties do not give rise to such a right sufficient to state a claim under § 1983."); *Citizens' Aide/Ombudsman v. Rolfes*, 454 N.W.2d 815, 818 (Iowa 1990) (finding that *Hannah [v. Larche,* 363 U.S. 420, 442 (1960)] held that "no procedural due process rights attach to actions of an agency involved in a purely investigative and fact-finding mode"). Plaintiff's complaint is **dismissed** for failure to state a cognizable claim.

### H. 24-CV-96-CJW-KEM

On September 9, 2024, plaintiff filed a complaint asserting Section 1983 claims against numerous Linn County Correctional Center employees.[13] (24-CV-0095-CJW-KEM, Doc. 1-1). He identifies six defendants on his Section 1983 forms, including Jail Administrator Brian D. Gardner, Chief Deputy Doug Riniker, Captain Kent Steenblock, Major Mathew Sandvick, Lieutenant Matt Pavelka, and Lieutenant Chad Shover. (*Id.*,

---

[13] Plaintiff does not include a case number for an existing case on his Section 1983 form, and it appears that he is filing a complaint in a new case. However, there does seem to be some level of overlap with allegations in his initial complaint in 24-CV-76-CJW-KEM so there is a possibility that plaintiff intended this to be an amended complaint in 24-CV-76-CJW-KEM. Given his predilection for filing duplicative claims, the Court cannot be sure. However, given the lack of a case number on the complaint, the Court will construe it as another new case.

at 2-3). His caption includes those defendants and an additional three defendants: Nurse Tia, Sergeant Munier, and Deputy Snyder. (*Id.*, at 1). On that section of the form asking what rights he asserts that defendants are violating, he states:

> I'm holding the aforementioned names/defendants above accountable for having a spiritual complexion of acting under color of criminal and civil injustices by depriving me and others like me [of] our rights, privileges, or immunities that remedies Administrative Procedure that's secured to us under the Constitution and Federal Laws. Violation 28 U.S.C. § 1915(g) and violation 42 U.S.C. § 1983 and any other Federal Law like having two job titles that automatically gridlock relief for inmates but grants conduct[ ] that which disrupts or interferes with the security, tranquility, or orderly running of their institution; from employees.

(*Id.,* at 3). He includes some conclusory allegations about placement in restrictive housing and shifting his housing around, mistreating him instead of "rectifying legitimate concerns effectively," incidents "where I have rejected the staffs assertions of cruel and unusual punishment," and that he refuses to "be branded to stand in a lining formation like cattle to receive my medication." (*Id.,* at 5). Plaintiff also makes vague references to violating HIPAA, misuse of medications, insolence and being disrespectful toward him, severe emotional distress, and arguments with nurses and deputies, among other assertions. (*Id.,* at 5, 7). He attaches a handwritten note that he labels a grievance that includes a long recitation of various complaints, including investigation of grievances, medical and safety concerns such as black mold in bathrooms, a patient with tuberculosis in general population, rust, and his placement in restrictive housing where there are stains from bodily fluids. (*Id.*, at 12-14). For relief, he seeks $38,480,000.00 in damages and an investigation of the facility. (*Id.,* at 5).

Once again, plaintiff's complaint suffers from a number of problems. His conclusory and vague assertions are difficult to discern. Plaintiff does not tie most allegations to particular defendants. Rather, he directs allegations generally against every

defendant. This is another kitchen sink pleading that complains in a nonsensical manner about a multitude of unrelated issues, many of which he has alluded to in previous filings. Because it does not include a short and plain statement of his claim, this complaint fails to satisfy with the requirements of Rule 8(a). Accordingly, this complaint is **dismissed** for failure to state a cognizable claim.

## IV.    ADMONITION

Plaintiff has filed a series of seven cases in this Court in a matter of weeks and has inundated the Court with filings for those cases. Most of his complaints fail to contain a "short and plain statement of the claim" under Federal Rule of Civil Procedure 8(a)(2).[14] Rather, his complaints typically contain nonsensical, conclusory allegations untied to individual defendants. In addition, he regularly includes improper defendants in his complaints and he files duplicative allegations. Plaintiff is put on notice that he must file a document with a single case number and must submit documents relevant and specific to particular cases. There are numerous issues with plaintiff's recent conduct, including abusing the judicial system, wasting resources, and likely acquiring for himself "three strikes" under Section 1915(g). Based on the forgoing, plaintiff is put on notice that if he files further frivolous cases in this district, or continues to submit filings that fail to follow the standards that are described in this order, he will be directed to show cause why he should not be sanctioned for abusing the judicial system. Sanctions will likely include restrictions on his ability to file new cases without leave of the Court and could include monetary penalties.[15] Finally, plaintiff is put on notice that any document

---

[14] And at least half of the complaints were filed *after* the Court explained the requirements of Rule 8 to the plaintiff. (*See* 24-CV-76-CJW-KEM, Doc. 2, at 2-3.)

[15] The Court has both inherent and statutory authority to impose such sanctions:

he sends to the Court that is not clearly labeled with the standard filing information, including a single case name, number, and the type of document being filed (whether it be a new case, some type of motion, a resistance, a reply, or any other type of court filing) will be docketed by the Clerk of Court as correspondence in 24-CV-91-CJW-KEM with no further action taken.

## V. CONCLUSION

For the reasons stated:

1.  Plaintiff's motions (24-CV-69-CJW-KEM, Doc. 5; 24-CV-72-CJW-KEM, Doc. 3; 24-CV-84-CJW-KEM, Doc. 1; 24-CV-91-CJW-KEM, Doc. 1; 24-CV-92-CJW-KEM, Doc. 1; 24-CV-96-CJW-KEM, Doc. 1) to proceed in forma pauperis are **granted**.

2.  The Clerk of Court is directed to file each complaint (24-CV-69-CJW-KEM, Doc. 1-1; 24-CV-72-CJW-KEM, Doc. 1-1; 24-CV-84-CJW-KEM, Doc. 1-1; 24-CV-91-CJW-KEM, Doc. 1-1; 24-CV-92-CJW-KEM, Doc. 1-1; 24-CV-96-CJW-KEM, Doc. 1-1) without the prepayment of fees.

3.  Plaintiff is ordered to submit an initial partial filing fee of $4.00 for each case (24-CV-69-CJW-KEM; 24-CV-72-CJW-KEM; 24-CV-84-CJW-

---

A district court possess inherent authority to take action to prevent abuse of the judicial system. *See Chambers v. Nasco, Inc.*, 501 U.S. 32, 43–45 (1991); *accord Salmeron v. Enterprise Recovery Sys., Inc.*, 579 F.3d 787, 793 (7th Cir. 2009); *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002); *Greiner v. City of Champlin*, 152 F.3d 787, 789 (8th Cir. 1998); *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993); *Gillette Foods Inc. v. Bayernwald–Fruchteverwertung, GmbH*, 977 F.2d 809, 813–14 (3d Cir. 1992). I also note that Federal Rule of Civil Procedure 11 authorizes a district court to impose sanctions on attorneys and parties who bring repeated frivolous lawsuits. *See Yan Zhang v. Equity Props. Trust*, 313 Fed. App'x 926, 927 (8th Cir. 2009); *Stilley v. James*, 48 Fed. App'x 595, 597 (8th Cir. 2002).

*Urban v. Sells*, No. C14-4025-MWB, 2014 WL 3809977, at *13 (N.D. Iowa Aug. 1, 2014).

29

KEM; 24-CV-91-CJW-KEM; 24-CV-92-CJW-KEM; and 24-CV-96-CJW-KEM) by no later than thirty days from the date of this order. If necessary, he may request in a written motion an extension of time to pay the initial partial filing fees. Additionally, after he pays the initial partial filing fees, the institution having custody of him is directed to collect and remit monthly payments in the manner set forth in 28 U.S.C. § 1915(b)(2). Until the $350.00 filing fees are paid in full, he is obligated to pay and the institution having custody of him is directed to collect and remit monthly payments in the manner set forth in 28 U.S.C. § 1915(b)(2). Until the $350.00 filing fees are paid in full, he is obligated to pay and the instituted having custody of him is obligated to forward 20 percent of the preceding month's income credited to his account each time the amount in the account exceeds $10.00.

4.    The Clerk of Court is **directed** to send a copy of this order and the notice of collection of the filing fees to the appropriate official at the place where plaintiff is an inmate.

5.    After an initial review of case 24-CV-69-CJW-KEM, plaintiff's complaint (24-CV-69-CJW-KEM, Doc. 1-1) is **dismissed** because it fails to state a claim upon which relief may be granted. Plaintiff's motions to amend his complaint (24-CV-69-CJW-KEM, Docs. 3-1, 5-1) are denied as futile because they also fail to state a claim upon which relief may be granted.[16]

6.    After an initial review of case 24-CV-72-CJW-KEM, plaintiff's complaints (24-CV-72-CJW-KEM, Docs. 1-1, 3-1) are **dismissed without prejudice** as duplicative.

---

[16] The Clerk of Court is directed to retitle 24-CV-69-CJW-KEM, Doc. 3-1 as a motion to amend the complaint and retitle 24-CV-69-CJW-KEM, Doc. 5-1 as a second motion to amend the complaint.

7.    After an initial review of case 24-CV-84-CJW-KEM, plaintiff's complaint (24-CV-84-CJW-KEM, Doc. 1-1) is **dismissed** because it fails to state a claim upon which relief may be granted.

8.    After an initial review of case 24-CV-91-CJW-KEM, plaintiff's complaint (24-CV-91-CJW-KEM, Doc. 1-1) is **allowed to proceed past initial review**.

9.    The Clerk of Court is directed to serve, via certified mail or similar tracked mail service, the complaint (24-CV-91-CJW-KEM, Doc. 1-1), along with a copy of this order and the waiver of service of summons form, on defendant in care of the Hiawatha Police Department.  The Clerk of Court is also directed to send a copy of this order, along with the complaint, to the Hiawatha City Attorney's Office.

10.   After an initial review of case 24-CV-92-CJW-KEM, plaintiff's complaint (24-CV-92-CJW-KEM, Doc. 1-1) is **dismissed** because it fails to state a claim upon which relief may be granted.

11.   After an initial review of case 24-CV-96-CJW-KEM, plaintiff's complaint (24-CV-96-CJW-KEM, Doc. 1-1) is **dismissed** because it fails to state a claim upon which relief may be granted.

12.   Each dismissal, other than the dismissal of 24-CV-72-CJW-KEM, could count as a strike under 28 U.S.C. § 1915(g).  *See Gonzalez v. United States*, 23 F.4th 788, 791 (8th Cir. 2022) (noting that although a district court cannot prospectively find that a plaintiff has accrued one or more strikes

under Section 1915(g) the court may alert the plaintiff about potential consequences of future litigation).[17]

**IT IS SO ORDERED** this 13th day of September, 2024.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa

---

[17] As discussed above, plaintiff's cases fail for a multitude of reasons. Thus, despite the fact that some of those complaints may run afoul of *Heck*, which would alone result in a dismissal without prejudice, there are sufficient alternative reasons to dismiss each of plaintiff's cases (other than 24-CV-72-CJW-KEM) that they are dismissed with prejudice.

TO:   WARDEN/ADMINISTRATOR
      **Linn County Correctional Center, Cedar Rapids, Iowa**

### NOTICE OF COLLECTION OF FILING FEES

You are hereby given notice that Emmanuel Terrill Pledge, an inmate at your facility, filed the following lawsuits in the United States District Court for the Northern District of Iowa: *Pledge v. Nicholas L. Scott, et al.*, Case No. 24-CV-69-CJW-KEM, *Pledge v. Captain Kent Steenblock*, Case No. 24-CV-72-CJW-KEM, *Pledge v. Department of Justice*, Case No. 24-CV-84-CJW-KEM, *Pledge v. Officer Roland*, Case No. 24-CV-91-CJW-KEM, *Pledge v. Bernardo Granwehr*, *et al.*, Case No. 24-CV-92-CJW-KEM, and *Pledge v. Brian D. Gardner, et al.*, Case No. 24-CV-96-CJW-KEM. The inmate was granted in forma pauperis status under Title 28, United States Code, Section 1915(b), which requires partial payments of the $350.00 filing fees. Based on the inmate's statements, the court has assessed initial partial filing fees of $4.00 in each case, which the inmate must pay now to the Clerk of Court. *See* 28 U.S.C. § 1915(b)(1).

> After payment of the initial partial filing fee, the [inmate] shall be required to make monthly payments of 20 percent of the preceding month's income credited to [his] account. The agency having custody of the [inmate] shall forward payments from [his] account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). Therefore, you must monitor the account and send payments to the Clerk of Court according to the system provided in 28 U.S.C. § 1915(b)(2), that is, after the inmate pays the initial partial filing fees of $4.00 in each case, you should begin making monthly payments of 20 percent of the preceding month's income credited to the inmate's account. Please make the appropriate arrangements to have these fees deducted and sent to the court as instructed. If the inmate has been relocated to a different institution, please forward this Order and Notice to the institution having custody of him. Any institution having custody of the above-named inmate shall collect and remit the filing fees as set forth above.

By:  /s/ des, Deputy Clerk
_____
Paul De Young
U.S. District Court Clerk
Northern District of Iowa